IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. CHAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
HOKMING B. CHAN, APPELLANT.

Filed December 31, 2013.    No. A-13-237.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hayes for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Hokming B. Chan appeals from the decision of the district court for Lancaster County that, after a jury trial, convicted him of possession with intent to deliver (marijuana). We affirm.

BACKGROUND

On February 4, 2011, a Trooper Kermoade observed a Hyundai Santa Fe driven by Wade Tang following another vehicle too closely on Interstate 80, near Lincoln, Nebraska. Kermoade pulled Tang over with the intent of issuing a warning for the traffic violation. Chan was a passenger in the vehicle driven by Tang. During the stop, Kermoade became suspicious of further criminal activity, and a canine sniff search was subsequently conducted on the vehicle. As a result of the canine sniff, more than 70 pounds of marijuana were found in the vehicle.

The State filed an information charging Chan with possession with intent to deliver (marijuana), a Class III felony.

Chan filed a motion to suppress all physical and testimonial evidence obtained as a result of the "unlawful" search, seizure, interrogation, arrest, and detention which occurred on February 4, 2011. Chan's motion was overruled following a hearing.

A jury trial was held in October 2012. Kermoade testified about the traffic stop on February 4, 2011. Additionally, a DVD recording of the traffic stop was received into evidence. Kermoade advised Tang that the reason he was stopped was for following another vehicle too closely and that a written warning would be issued. Kermoade requested Tang's and Chan's licenses and asked Tang to accompany him to the cruiser while he issued the warning. While in the cruiser, Kermoade ran a records check of Tang's and Chan's Massachusetts' drivers' licenses and criminal histories. When the results of the criminal history check came back, it showed that Tang had a positive history for drug convictions. Kermoade engaged Tang in a casual conversation while issuing the written warning. Tang denied having any drug arrests. He also stated that he and Chan went to California for 3 days to "hang out" and "party." Kermoade found this suspicious because he had observed a large amount of luggage in the vehicle--more than needed for a short trip. Kermoade also spoke to Chan when Kermoade returned to the rental vehicle to obtain the vehicle registration. Tang and Chan gave conflicting information to Kermoade. Tang told Kermoade that he and Chan stayed at a friend's house in California, but Chan said they stayed in a hotel. Tang told Kermoade that they were driving back to Boston, Massachusetts, because the flights were delayed or canceled due to a snowstorm in Boston. Chan told Kermoade that they were driving back because he did not have enough "credit."

After finishing with the traffic warning, Kermoade asked Tang if he could ask him a few more questions. Tang agreed. When Kermoade asked Tang if both he and Chan were responsible for the vehicle and the luggage, Tang said "yeah." Kermoade asked Tang if there were any drugs in the vehicle, and Tang said there were not. When Kermoade asked Tang for permission to search the vehicle and the luggage, Tang responded, "I have to get back to Boston." Kermoade asked Tang who rented the vehicle, and Tang said that Chan had rented it.

Kermoade left Tang in the cruiser and approached Chan in the rental vehicle. When asked if both he and Tang were responsible for the vehicle and luggage, Chan said "uh huh." Kermoade asked Chan if there were any drugs in the vehicle, and Chan said there were not. Kermoade asked Chan, as "the renter of the vehicle" for permission to search the vehicle and the luggage. Chan said, "I guess so." When Kermoade clarified by asking, "[S]o you are saying yes?" Chan responded, "[I]f you have to." Kermoade told Chan that "it's not a have to, it's a yes or no question." At that point, Chan said he did not understand and asked to speak to Tang. Kermoade agreed to let Chan speak to Tang as long as they spoke in English. Chan spoke to Tang using some English and some non-English. After speaking to Tang at the cruiser, Chan asked to speak with Kermoade away from the cruiser. Chan told Kermoade, "I'm not going to lie, I don't know what's in there." Because Kermoade could not get a clear answer on whether or not Chan was giving permission to search, he asked Chan if he would wait for a dog to come do an exterior search of the vehicle with its nose. Chan agreed to wait for a dog. A canine sniff search was subsequently conducted on the vehicle. As a result of the canine sniff, marijuana was found in four suitcases in the vehicle.

Another trooper who inventoried the four suitcases testified that there were 18 bags of marijuana in each suitcase and that each bag of marijuana weighed either 1 or 1.1 pounds.

Tang testified that he has known Chan for more than 20 years. In January 2011, Tang asked Chan to go with him to California to "hang out," drink, and "party with chicks" for a couple days. He testified that he did not tell Chan that the real purpose of the trip was to "pick

up" marijuana. Tang had been unemployed for a year, so he asked Chan to pay for the airline tickets, with the promise to reimburse him (even for Chan's ticket). Chan agreed. Tang testified that he asked Chan to purchase one-way tickets because he did not know how long he would spend in California. According to Tang, he did not originally tell Chan that he intended to drive back.

When they flew from Boston to San Francisco, California, Tang had one dufflebag and Chan had one carry-on suitcase. While in California, Tang and Chan did not spend all of their time together. Tang said that they would drink and "hang out" at night, but that "obviously I had things to do" during the day.

For the return trip, Tang asked Chan to rent a vehicle for him because he did not have a credit card. Tang thought Chan would fly back to Boston, but Chan could not get a flight because everything was delayed or canceled due to weather. After renting the vehicle, Tang dropped Chan off at the hotel. Tang then took the vehicle, picked up four suitcases of marijuana, and then went back to the hotel to pick up Chan. Tang said he never told Chan what was in the suitcases, and when Chan asked, Tang told him not to worry about it.

Tang did most of the driving back from California because Chan was sick. Tang testified that before the troopers searched the vehicle, he told Chan not to say anything to the troopers, but did not tell Chan why. According to Tang, Chan was mad at him after the troopers found the marijuana and Chan said Tang should have told him about the drugs.

Tang testified that he pled guilty to possession of marijuana, more than 1 pound, and that he is currently on parole. He testified that after the plea agreement, he took full responsibility for the marijuana. Tang said he wanted to take responsibility earlier, but that his lawyer advised him that it would not be good for his case. Tang testified that Chan has not completely severed ties with him since the arrest. They still socialize, just not as much as they had before the arrest.

Chan testified via an interpreter at trial. He said that Tang asked him to go to the West Coast with him for a few days. Chan agreed to go. Chan bought the plane tickets because Tang did not have a credit card. He was willing to lend Tang the money because they were friends and had lent each other money in the past. Chan said he did not know that Tang had been unemployed for the previous year. Chan bought one-way tickets to San Francisco because he was not sure how many days they would stay in San Francisco, and they planned to go to Los Angeles after San Francisco. Chan stated that he always purchases one-way tickets because they are cheaper than a round-trip ticket. But later, he said that he has been to California multiple times in the past 5 years and has purchased both one-way tickets and round-trip tickets.

Chan originally planned to stay at a friend's house in California, but ended up getting a hotel room. Chan said he paid for the hotel room because Tang did not spend a lot of time there; Tang just came at night to sleep. Chan stated that he and Tang would have breakfast together, then go their separate ways, and that Tang would return at lunch or dinner.

Chan testified that the original plan was to go back to Boston separately. Chan testified that he told Tang "no" the first two times Tang asked him to help get a rental car. The third time Tang asked, Chan agreed because Tang was his friend and because he thought he could get a ride back with Tang (flights were not available and the train schedule was not "suitable"). However, Chan then testified that he put Tang's name on the rental agreement as the primary driver

because Chan was not planning to go with him. It was only at the last minute that he decided to drive back with Tang.

When they were getting ready to leave the hotel, Chan asked Tang why there was so much luggage in the vehicle, but Tang said not to worry and Chan did not inquire any further. Chan was still curious about the luggage, and while they were stopped at a gas station in Nevada, he asked Tang what was in them and if he was transporting heroin (Chan knew Tang was associated with "the wrong crowd" and that Tang's sister used drugs). Tang again told him not to worry. Chan said he never suspected that Tang was getting marijuana in California.

Chan testified that during the traffic stop, he did not understand all of the questions that the trooper was asking. Chan asked Tang what the trooper was saying, and Tang said the trooper wanted consent for the search and to know what was in the suitcases. Chan said Tang instructed him not to give consent or say anything to the trooper. Chan testified that he knew he was in trouble when Tang told him not to say anything to the trooper. Chan did give consent to search the vehicle. He said that he tried to let the trooper know that Tang told him not to give consent, but the language barrier prevented him from doing so. It was not until he was arrested that Chan realized there was marijuana in the vehicle. Chan testified that he still runs into Tang, but "I pretty much don't want to talk to him."

Both Chan's motion to dismiss at the end of the State's case in chief and his motion for directed verdict at the end of the trial were overruled. The jury found Chan guilty of possession with intent to deliver (marijuana). He was later sentenced to 2 to 4 years' imprisonment and was given 144 days' credit for time served. Chan has timely appealed his conviction and sentence to this court.

ASSIGNMENTS OF ERROR

Chan assigns that (1) the district court erred in overruling his motion to dismiss, (2) the district court erred in overruling his motion for a directed verdict, (3) the evidence was insufficient to support the jury's guilty verdict, and (4) the sentence imposed was excessive.

STANDARD OF REVIEW

In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Eagle Bull*, 285 Neb. 369, 827 N.W.2d 466 (2013). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *Id.* If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

ANALYSIS

*Motion to Dismiss.*

Chan claims the court erred in overruling his motion to dismiss, which was made after the State presented its case in chief. Chan testified in his own behalf after the State had rested and after his motion to dismiss was overruled. When a court overrules a defendant's motion to dismiss at the close of the State's case in chief and the defendant proceeds to trial and introduces evidence, the defendant waives the appellate right to challenge the trial court's overruling of the motion to dismiss. *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013). Thus, Chan waived his argument on this assigned error by proceeding to trial and introducing evidence.

*Directed Verdict and Sufficiency of Evidence.*

Chan's assignments of error regarding directed verdict and sufficiency of the evidence have merit only if no rational trier of fact could have found on the evidence presented by the State that the essential elements of the crime he was charged with were met. *State v. Eagle Bull, supra*. We therefore must examine both the charge against him and the evidence presented by the State.

Chan was charged with possession with intent to deliver (marijuana) pursuant to Neb. Rev. Stat. § 28-416(1)(2)(b) (Cum. Supp. 2010), which provides:

> (1) Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance . . . .
>
> (2) . . . [A]ny person who violates subsection (1) of this section with respect to . . . (b) any other controlled substance classified in Schedule I, II, or III of section 28-405 shall be guilty of a Class III felony . . . .

Marijuana is classified as a Schedule I controlled substance. Neb. Rev. Stat. § 28-405 (Cum. Supp. 2010).

In this case, the jury was instructed that it could convict Chan of the crime with which he was charged either as the principal offender or as an aider and abettor. "Aiding and abetting is simply another basis for holding an individual liable for the underlying crime." *State v. Foster*, 286 Neb. 826, 843, ___ N.W.2d ___, ___ (2013). See, also, *State v. Kitt*, 284 Neb. 611, 823 N.W.2d 175 (2012). "By its terms, [Neb. Rev. Stat.] § 28-206 [(Reissue 2008)] provides that a person who aids or abets may be prosecuted and punished as if he or she were the principal offender." *Kitt*, 284 Neb. at 634, 823 N.W.2d at 192. No particular acts are necessary, nor is it necessary that the defendant take physical part in the commission of the crime or that there was an express agreement to commit the crime. *Id.* Mere encouragement or assistance is sufficient. *Id.* An information charging a defendant with a specific crime gives the defendant adequate notice that he or she may be prosecuted for the crime specified or as having aided and abetted the commission of the crime specified. *Id.*

Chan argues that there was no evidence that affirmatively links him to the marijuana. In *State v. Draganescu*, 276 Neb. 448, 478, 755 N.W.2d 57, 85 (2008), the Nebraska Supreme Court said:

> Constructive possession of an illegal substance may be proved by direct or circumstantial evidence. It is true that a passenger's mere presence in a vehicle with contraband is insufficient to support a finding of joint possession. But possession of an illegal substance can be inferred from a vehicle passenger's proximity to the substance or other circumstantial evidence that affirmatively links the passenger to the substance. Generally, a passenger's joint possession of a controlled substance found in a vehicle can be established by evidence that (1) supports an inference that the driver was involved in drug trafficking, as distinguished from possessing illegal drugs for personal use; (2) shows the passenger acted suspiciously during a traffic stop; and (3) shows the passenger was not a casual occupant but someone who had been traveling a considerable distance with the driver. Courts have reasoned in part that a juror may reasonably infer that a driver with a possessory interest in a vehicle who is transporting a large quantity of illegal drugs would not invite someone into his or her vehicle who had no knowledge of the driver's drug activities.

There is certainly circumstantial evidence that Chan aided and abetted Tang in the crime of possession of marijuana with intent to deliver. Tang affirmatively testified that he traveled to California to "pick up" more than 70 pounds of marijuana and intended to make money by transporting the marijuana back to Boston. Both Tang and Chan testified that Chan did not know the purpose of the trip. However, both testified that Chan was curious and inquired as to the contents of the four suitcases Tang placed in the vehicle for the return trip to Boston, and Chan admitted asking Tang whether there were drugs in the suitcases. Furthermore, the uncontroverted evidence is that Chan paid for the one-way airplane tickets, hotel, and rental car. The rental car receipt did not list Tang as an additional driver, contrary to Chan's and Tang's testimony that Tang was listed as an additional driver. Chan and Tang both claimed responsibility over the vehicle and the luggage. Chan acted suspiciously during the traffic stop, in that it was only after Kermoade sought Chan's consent to search the vehicle that Chan claimed he had difficulty understanding Kermoade and asked to speak with Tang. And Tang did not take full responsibility for the marijuana until after he accepted a plea agreement with the State. Viewing the evidence in the light most favorable to the State, we determine that there was sufficient evidence for the jury to find Chan guilty of possession of marijuana with the intent to deliver and that the trial court did not err in overruling the motion for directed verdict.

*Excessive Sentence.*

Chan asserts that the district court imposed an excessive sentence. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

Chan was 32 years old at the time of the crime and 34 at the time of sentencing. He immigrated to the United States from Hong Kong when he was in the fifth grade. Although he

went to school until he was 18 years old, he only has an eighth grade education. Prior to his arrest, Chan was self-employed as an auto recycler and salvager. His criminal history includes convictions for larceny of a motor vehicle and illegal possession of a firearm (August 1996), as well as "possession/make burglarious instrument" (December 2002). With regard to the current offense, Chan had more than 70 pounds of marijuana in the cargo compartment of his rental vehicle when stopped by law enforcement. According to the presentence investigation, Chan is in the high-risk range to reoffend.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams, supra*. And it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d 579 (1990). Chan was convicted of one count of possession with intent to deliver (marijuana) under § 28-416, a Class III felony. Class III felonies are punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both. See Neb. Rev. Stat. § 28-105 (Reissue 2008). Chan was sentenced to 2 to 4 years' imprisonment and was given 144 days' credit for time served. His sentence is on the low end of the permissible sentencing range. Having considered the relevant factors in this case, we find that the sentence is not excessive or an abuse of discretion and affirm such sentence.

## CONCLUSION

For the reasons stated above, we affirm Chan's conviction and sentence.

AFFIRMED.